SO ORDERED.

SIGNED this 26th day of October, 2020.



_____
Dale L. Somers
United States Chief Bankruptcy Judge
_____

Designated for online use but not print publication
## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF KANSAS

**In re:**

**Steven Edward Holthaus**
**Connie Sue Holthaus,**

        **Debtors.**

Case No. 20-40065
Chapter 12

### Memorandum Opinion and Judgment
### Denying Debtors' Motions for Sale of Real Property

Debtors move to sell under 11 U.S.C. § 363[1] a substantial portion of their farm land located in Nemaha and Jackson Counties, Kansas.[2] Three

---

  [1] Future references in the text to Title 11 shall be to the section number only.

  [2] Doc. 143 (Nemaha County property) and Doc.144 (Jackson County property).

creditors with mortgage liens on the properties vigorously oppose the sale of the properties.[3]

An evidentiary hearing was held on October 19, 2020. Debtor Steve Holthaus appeared in person and by Debtors' counsel, Justice B. King. Creditor United Bank and Trust ("UBT") appeared by Tim Rottinghouse, community bank president, and counsel Patricia E. Hamilton. Creditor United States of America, on behalf of the Farm Service Agency ("FSA"), appeared by Tanya Sue Wilson, Assistant United States Attorney for the District of Kansas and Kathryn Sheedy, Assistant United States Attorney for the District of Kansas. Creditor First Heritage Bank ("FHB") appeared by Nicholas Hrencher, chief lending officer, and counsel Wesley F. Smith.[4]

---

[3] Docs. 149 (First Heritage Bank objection to sale of Nemaha County property); Doc. 150 (United Bank and Trust objection to sale of Nemaha County property); Doc. 151 (United Bank and Trust objection to sale of Jackson County property); Doc. 152 (Farm Service Agency objection to sale of Jackson County property); and Doc. 153 (Farm Service Agency objection to sale of Nemaha County property).

[4] This Court has jurisdiction pursuant to 28 U.S.C. § 157(a) and §§ 1334(a) and (b) and the Amended Standing Order of Reference of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's Bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective June 24, 2013. D. Kan. Standing Order No. 13-1, *printed in* D. Kan. Rules of Practice and Procedure at 168 (March 2014). A motion for to sell real estate is a core proceeding which ths Court may hear and determine as provided in 28 U.S.C. § 157(b)(2)(N). There is no objection to venue or jurisdiction over the parties.

Debtors filed this Chapter 12 case on January 22, 2020. A proposed plan has not been confirmed. If approved, the sale will provide the basis for an amended plan. Debtors propose to sell through two contracts for sale three tracts of real property to Scott. D. Hoerr. The first contract involves two parcels in Nemaha County. The first tract of 120 acres is the quarter section which is Debtors' home place, less the NE 1/4 (40 acres), on which the home and farm buildings are located. The portion to be sold is crop land. The second tract is 80 acres of prime crop land also located in Nemaha County, approximately four miles north of the homestead. Mr. Hoerr proposes to purchase these two tracts for $800,000 cash, with the purchase price being allocated $4,000 per acre, with $320,000 being allocated to the 80 acre tract and $480,000 being allocated to the home place crop land. The second contract is for the sale of approximately 120 acres of crop land in need of erosion remediation in Jackson County. The purchase price is $250,000 cash. Both contracts provide that closing shall be on or before November 2, 2020, subject to this Court approving the sale under § 363 on or before October 28, 2020.

Steve Holthaus testified about the proposed sale. He has known Mr. Hoerr for approximately three years and believes that the sales will close, if approved. He has no other offers for the properties. He believes, based upon

3

his familiarity with recent sales of a Metgzer property and a Bennett Trust property in Nemaha County, that the sale price of $4000 per acre for the two Nemaha County tracts is reasonable. The Jackson County land is worth significantly less per acre because it is of poorer quality than the Nemaha County property and needs soil erosion work; in its present state it is not eligible for participation in government agricultural programs. At Debtors' request, Mr. Hoerr has orally agreed that either both contracts or no contract will close; he does not have the option of purchasing just the Nemaha County or just the Jackson County property. This is not reflected in the sales contracts.

Steve Holthaus also testified that Mr. Hoerr has orally agreed to lease the purchased properties to Debtors after the sale for $175 per acre per year and that Debtors or their son will have a right of first refusal if Mr. Hoerr determines to sell the properties. The rental payment amount is not reflected in the contract for either the Nemaha County or Jackson County property. The Jackson County contract is silent as to both Debtors' right to rent or purchase. For several years prepetition and since filing of the petition, the land has been farmed by Debtors' son, Derrick, rather than Steve Holthaus. Assuming he can lease the properties from Mr. Hoerr, Debtors plan to resume farming, since the rental payment would be less than Debtors' current debt

4

service. Debtors do not presently have a commitment for an operating line of credit, as potential lenders are waiting to see details of Debtors' bankruptcy.

Mr. Rottinghouse, the primary agricultural lender at UBT and the officer in charge of Debtors' loan, testified on behalf of the bank. As of the date of filing, Debtors were indebted to UBT in the approximate amount of $600,000, with interest accruing at the rate of $68.9125 per day.[5] The estimated payoff is $650,000. The debt is secured by first mortgage liens on the 80 acre Nemaha County property and the Jackson County property, plus equipment. Mr. Rottinghouse did not strongly challenge the sales price of the Jackson County property, but testified that the 80 acre Nemaha County property is worth significantly more than the prices agreed to by Mr. Hoerr. In April 2018, Debtors submitted a financial statement to UBT stating that the 80 acre Nemaha County property was worth $460,000, which is $5,750 per acre.[6] Mr. Rottinghouse testified about the recent Bennett sale, on which Mr. Holthaus relied when testifying that $4,000 per acre was a reasonable price for the 80 acre tract. The Bennett 80 acres is approximately 5 miles south of the Debtors' Nemaha County 80 acres. Mr. Rottinghouse concluded that the portions of that property comparable to the Debtors' 80 acre tract

---

[5] Doc. 27.

[6] Doc. 150, 15.

brought a price of $4,500 to $5,000 per acre. He testified that Debtors' 80 acre tract is very marketable and could easily be sold by the end of the year for more than the Hoerr contract price. If the Hoerr sale closes, UBT estimates that it will receive about $550,000, leaving $100,000 secured only by equipment. Although Debtor's schedules listed equipment valued at $100,000, UBT is unsure what equipment remains in Debtors' possession and whether it is in good repair.

Nicholas Hrencher, chief landing officer and agricultural lender, testified on behalf of FHB. The bank, together with FSA, financed Debtors' purchase of the home place from Mr. Holthaus's mother's estate in about 2016. FHB claims a first mortgage lien of approximately $580,000 on the home place, which includes the 120 acres of crop land subject to the Hoerr sale contract, the 40 acre tract with the home and other improvements which Debtors are retaining, and an 80 acre primarily pasture tract across the road from the home place, which also is not being sold. FSA claims a second mortgage lien of approximately $295,000 on this same property, and FHB has a third mortgage securing $52,000. FHB does not have a lien on personal property. Mr. Hrencher testified about the Metzger sale on which Debtor relied when testifying that $4,000 was an appropriate sale price for the home place crop land. He concluded, based upon the mix of the Metzger land

6

between crop, pasture, and waste, the Metzger crop land sold for about $5,000 per acre, not the $4,000 value assigned by Debtor. He would not object to the sale if the price of the 120 acre home place tract were $588,000, rather than $480,000. There have been numerous recent real estate sales in the area in the spring of 2020. Prices have been increasing because this has been a good crop year, commodity prices have increased, and interest rates are low.

FSB is owed approximately $305,000. It holds a second lien on the Jackson County property and on personal property. It objects to the sale of the Jackson County property primarily on the premise that the property is worth more than the $250,000 being offered in the sales contract.

Section 363(b)(1) provides that a trustee "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." "In determining whether to approve a proposed sale under section 363, courts generally apply standards that, although stated various ways, represent essentially a business judgment test."[7] Section 1206 provides, that a Chapter 12 Trustee "may sell property under section 363(b) . . . free and clear of any interest in such property of an entity other than the estate if the property is farmland . . ., except that the proceeds of such sale shall be subject

---

[7] 3 *Collier on Bankruptcy* ¶ 363.02 ((Richard Levin & Henry J. Sommer eds.-in-chief, 16th ed. 2020).

to such interest." This section allows farmers to sell assets not needed for reorganization prior to confirmation.[8] At a hearing on the sale motion under § 1206, "the primary issue will be the sufficiency of the sale price. Although not specifically required by section 1206, it will also be incumbent upon the debtor to show that the proposed sale is beneficial to the estate and is the result of an arm's length transaction."[9]

Debtors have presented the § 363 issue to the Court through two sale motions, one for the Nemaha County land and one for the Jackson County land. Although the sale contracts attached to each motion are substantially similar, there are some differences on matters about which Mr. Holthaus testified. The contract for sale of the Nemaha County land contains a seller's right of first refusal to rent the property being sold, a right to first refusal to purchase the property being sold if buyer sells the property, and a "split of the water well and rights to the water 50/50."[10] The contract for sale of the Jackson County property does not contain similar provisions. Further, there is nothing in either contract that Mr. Hoerr must purchase all three tracts or none of the tracts, a condition to which Debtor testified that Mr. Hoerr has agreed. For

---

[8] 8 *Collier on Bankruptcy* ¶ 1206.01.

[9] *Id.*

[10] Doc. 143-1, 4.

purposes of this analysis, the Court will rely on Mr. Holthaus's testimony and assume that Debtors will have a right to lease all the properties after the sale, a right of first refusal, and that both contracts must be approved for there to be any sale. Conversely, disapproval of the sale of one tract will result in there being no sale.

The Court finds that from Debtors' perspective, the proposed sales and lease backs constitute a favorable business opportunity and a route out of bankruptcy. Mr. Holthaus has determined that the sale prices are reasonable and argues that to the extent the funds are not sufficient to satisfy creditors holding mortgage liens on the properties, any deficiency will be fully secured by other collateral. Most importantly, assuming the sales are closed and Debtors can obtain operating loans, Mr. Holthaus will be able to resume farming the properties and payments to his creditors through a confirmed plan. By linking the sale of the Nemaha County property to the sale of the Jackson County property, Debtors are able to sell the Jackson County property, which is not a desirable tract because of poor soil quality and needed improvements. Further, Debtors retain the possibility of reacquiring the properties if Mr. Hoerr should desire to sell. Mr. Holthaus testified that he could purchase the properties back at the same price for which he sold them.

However, the arguments and testimony offered by the secured creditors

challenge this optimistic picture. The sale price is the most significant factor to consider, and the Court finds that there is sufficient evidence to conclude that the Nemaha County property is undervalued. It is important to note the Court has not been presented with an expert appraisal of any of the tracts. At trial the Court took under advisement the objections to FHB's counsel's attempt to qualify Mr. Hrencher as an expert appraiser and UBT's counsel's offer as an exhibit a copy of an appraisal report prepared by a third party who was not present as an admissible business record. The Court hereby sustains both objections. As to the first objection, Mr. Hrencher is a banker who regularly uses real estate appraisals in the course of his business, but he is not qualified by knowledge, skill, or education as an expert appraiser. As to the second objection, appraisal reports generally do not qualify as business records.[11]

Based upon the nonexpert testimony presented to the Court, the most significant price inadequacy is with respect to the 80 acre Nemaha County prime farmland tract. Mr. Holthaus allocates $320,000, or $4,000 per acre, to this tract. His valuation was justified by the reference to the recent sale of the Bennett trust property and the Metzger property. Mr. Holthaus testified that the land was comparable to his 80 acre tract and allocated the total sale price in each of the recent sales equally to each acre sold. The testimony of Mr.

---

[11] *In re Roberts*, 210 B.R. 325, 328-329 (Bankr. N.D. Iowa 1997).

Rottinghouse established that the Bennett trust property included a significant portion of pasture and wasteland, which has a lower value than the cropland, such that a proper allocation of the sale price yields a price of $4,500 per acre for the crop land. He further testified that the Bennett trust property tillable land is not as desirable as Debtors' 80 acre tract, which is comprised solely of high quality tillable land and no waste. As a result, Mr. Rottinghouse concluded that Debtors' prime 80 acre farmland has a market value of $5,000 per acre, or $400,000 total. The Court finds Mr. Rottinghouse's testimony convincing.

The Court also finds that the sale price of the 120 acres of crop land at the home place is also less than current market, although the discrepancy is not as stark as with the 80 acre tract. Mr. Hrencher testified about the sale of Metzger property, on which Debtors also relied as a basis for the $4,000 per acre price. Like the Bennett trust property, less than all of the Metzger property is tillable, such that Debtors' allocation of the sale price equally to each acre was flawed. Mr. Hrencher concluded that the sale of the Metzger property supported a price of $5,000 per acre for tillable land, including the farm land on the home place. Mr. Hrencher also testified that farm land prices have increased in 2020 due to high crop yields, high commodity prices, and low interest rates. Mr. Rottinghouse agrees with this observation.

The Court does not find that the Jackson County property is undervalued. A recent contract to sell the tract for $288,000 did not close. The testimony uniformly established that the land in its present state has issues. The fact the tract is not eligible for government programs reduces its marketability and value.

Contrary to the creditors' arguments, the Court is not concerned whether Mr. Hoerr has demonstrated the financial capacity to complete the sale, since the closing date is less than two weeks away. Likewise, the Court is not concerned that there is no detail concerning the Debtors' alleged right of first refusal if Mr. Hoerr determines to sell the property. The Court is concerned that a right to lease is stated only in the Nemaha County contract and is a right to first refusal, not a commitment to lease for $175 per acre per year, as testified by Mr. Holthaus. The trial cast doubt on Debtors' contention that even though the sale will bring less than the creditors' mortgage lien amounts, UBT and FSA will be fully secured by equipment and FHB by additional real estate. This of course increases the creditors' concerns about the sale price. But the parties must recognize that a sale under §§ 363(b) and 1206 does not require satisfaction of the outstanding liens and under the circumstances of this case, such an expectation is probably unrealistic.

12

Further, when reviewing the proposed sale and its effect on the estate, the Court has concerns about some aspects of the sale other than value. Debtors' ability to resume farming is dependent upon his lease of the three tracts after the sale for rent that is less that his present debt service. Only the Nemaha County contract contains a lease back clause, but it is a right of first refusal and does not establish a rental price. Further, Debtors' right to lease would last only as long as Mr. Hoerr owns the properties. Mr. Holthaus testified that he is unable to secure a commitment for an operating line of credit, since lenders want to see specifics about his bankruptcy case. This also casts doubt on whether Debtors are exercising sound business judgment when entering into the sale contracts.

In conclusion, the Court denies Debtors' motions to approve the sales under § 363. The principal reason for doing so is the inadequacy of the sale price for the Nemaha County land.

The foregoing constitute Findings of Fact and Conclusions of Law under Rules 7052 and 9014(c) of the Federal Rules of Bankruptcy Procedure which make Rule 52(a) of the Federal Rules of Civil Procedure applicable to this matter.

**Judgment**

Judgment is hereby entered denying Debtors' motions for authority to sell real property in Nemaha and Jackson Counties free and clear of liens and encumbrances of record.[12] The judgment based on this ruling will become effective when it is entered on the docket for this case, as provided by Federal Rule of Bankruptcy Procedure 9021.

It is so Ordered.

###

---

[12] Docs. 143 and 144.